# IN THE SUPREME COURT OF CALIFORNIA

GUSTAVO NARANJO et al.,
Plaintiffs and Appellants,

v.

SPECTRUM SECURITY SERVICES, INC.,
Defendant and Appellant.

S258966

Second Appellate District, Division Four
B256232

Los Angeles County Superior Court
BC372146

May 23, 2022

Justice Kruger authored the opinion of the Court, in which Chief Justice Cantil-Sakauye and Justices Corrigan, Liu, Groban, Jenkins, and O'Leary[*] concurred.

---

[*]    Presiding Justice of the Court of Appeal, Fourth Appellate District, Division Three, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

# NARANJO v. SPECTRUM SECURITY SERVICES, INC.

## S258966

Opinion of the Court by Kruger, J.

California law requires employers to provide daily meal and rest breaks to most unsalaried employees.  If an employer unlawfully makes an employee work during all or part of a meal or rest period, the employer must pay the employee an additional hour of pay.  (Lab. Code, § 226.7, subd. (c); Industrial Welf. Com. wage order No. 4-2001, §§ 11(B), 12(B).)  The primary issue before us is whether this extra pay for missed breaks constitutes "wages" that must be reported on statutorily required wage statements during employment (Lab. Code, § 226) and paid within statutory deadlines when an employee leaves the job (*id.*, § 203).  We conclude, contrary to the Court of Appeal, that the answer is yes.  Although the extra pay is designed to compensate for the unlawful deprivation of a guaranteed break, it also compensates for the work the employee performed during the break period.  (See *Murphy v. Kenneth Cole Productions, Inc.* (2007) 40 Cal.4th 1094, 1104.)  The extra pay thus constitutes wages subject to the same timing and reporting rules as other forms of compensation for work.

We also resolve a dispute over the rate of prejudgment interest that applies to amounts due for failure to provide meal and rest breaks.  Here, we agree with the Court of Appeal that the 7 percent default rate set by the state Constitution applies.  (See Cal. Const., art. XV, § 1.)

**I.**

Defendant Spectrum Security Services, Inc., (Spectrum) provides secure custodial services to federal agencies. The company transports and guards prisoners and detainees who require outside medical attention or have other appointments outside custodial facilities. (*Naranjo v. Spectrum Security Services, Inc.* (2009) 172 Cal.App.4th 654, 660 (*Naranjo I*).) Plaintiff Gustavo Naranjo was a guard for Spectrum. Naranjo was suspended and later fired after leaving his post to take a meal break, in violation of a Spectrum policy that required custodial employees to remain on duty during all meal breaks. (*Naranjo v. Spectrum Security Services, Inc.* (2019) 40 Cal.App.5th 444, 453–454 (*Naranjo II*).)

Naranjo filed a putative class action on behalf of Spectrum employees, alleging that Spectrum had violated state meal break requirements under the Labor Code and the applicable Industrial Welfare Commission (IWC) wage order.[1] (Lab. Code, § 226.7; IWC wage order No. 4-2001, § 11.)[2] The complaint

---

[1] IWC wage order No. 4-2001 regulates professional, technical, clerical, mechanical, and similar employment, including security guard service, and so covers the class members here.

[2] Naranjo also alleged that Spectrum violated state rest break requirements. (Lab. Code, § 226.7; IWC wage order No. 4-2001, § 12.) The trial court denied class certification on Naranjo's rest break claims because of purported variations in the putative class members' claims. The Court of Appeal reversed that decision and directed the trial court on remand to certify a class challenging Spectrum's alleged companywide policy of denying off-duty rest breaks. (*Naranjo II, supra,* 40 Cal.App.5th at pp. 476–481.) Spectrum has not sought review of that ruling, and we do not address it.

sought an additional hour of pay — commonly referred to as "premium pay" — for each day on which Spectrum failed to provide employees a legally compliant meal break. (See Lab. Code, § 226.7, subd. (c); IWC wage order No. 4-2001, §§ 11(B), 12(B).)

Naranjo's complaint also alleged two Labor Code violations related to Spectrum's premium pay obligations. According to the complaint, Spectrum was required to report the premium pay on employees' wage statements (Lab. Code, § 226) and timely provide the pay to employees upon their discharge or resignation (*id.*, §§ 201, 202, 203), but had done neither. The complaint sought the damages and penalties prescribed by those statutes (*id.*, §§ 203, subd. (a), 226, subd. (e)(1)) as well as prejudgment interest.

The trial court initially granted summary judgment in favor of Spectrum on federal law grounds not relevant here, but the Court of Appeal reversed. (*Naranjo I, supra,* 172 Cal.App.4th at pp. 663–669.) On remand, the trial court certified a class for the meal break and related timely payment and wage statement claims and then held a trial in stages.

The court first considered Spectrum's liability for meal break violations. Under the governing IWC wage order, an employer ordinarily must provide covered employees an off-duty meal period on shifts lasting longer than five hours. (IWC wage order No. 4-2001, § 11(A); see *Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004, 1034–1035.) An exception to this requirement allows for " 'on duty' " meal periods if "the nature of the work prevents an employee from being relieved of all duty," but only when "by written agreement between the parties an on-the-job paid meal period is agreed to."

3

(IWC wage order No. 4-2001, § 11(A); see *Brinker Restaurant Corp.*, at p. 1035.)  Naranjo did not dispute that Spectrum had always required on-duty meal periods as company policy because of the nature of its guards' work but argued that Spectrum did not have a valid written on-duty meal break agreement with its employees.  Agreeing with Naranjo that Spectrum had no valid agreement for part of the class period, the court directed a verdict for the plaintiff class on the meal break claim for the period from June 2004 to September 2007.  A jury found Spectrum not liable for the period beginning on October 1, 2007, after Spectrum had circulated and obtained written consent to its on-duty meal break policy.

The court then considered the related wage statement and timely payment claims.  The court concluded that the obligation to supply meal break premium pay also carried with it reporting and timing obligations.  Whether Spectrum was monetarily liable for failure to abide by those obligations depended on its state of mind:  The wage statement statute authorizes damages and penalties only for "knowing and intentional" violations and excuses "isolated and unintentional payroll error due to a clerical or inadvertent mistake"  (Lab. Code, § 226, subd. (e)(1), (3)), while the timely payment statutes impose penalties only for "willful[]" failures to make payment (*id.*, § 203).  The trial court concluded Spectrum's wage statement omissions were intentional and awarded Labor Code section 226 penalties, but the failure to make timely payment was not willful and so Spectrum was not liable for section 203 penalties.  The trial court entered judgment for the plaintiff class on the meal break and wage statement claims and awarded attorney fees and prejudgment interest at a rate of 10 percent.

Both sides appealed. The Court of Appeal affirmed in part and reversed in part. As relevant here, it affirmed the trial court's determination that Spectrum had violated the meal break laws during the period from June 2004 to September 2007 (*Naranjo II*, *supra*, 40 Cal.App.5th at pp. 457–463) but reversed the court's holding that a failure to pay meal break premiums could support claims under the wage statement and timely payment statutes (*id.* at pp. 463–475). It also ordered the rate of prejudgment interest reduced from 10 to 7 percent. (*Id.* at pp. 475–476.)

As the Court of Appeal explained, whether the wage statement and timely payment statutes apply to missed-break premium pay is a question that has generated confusion in the Courts of Appeal as well as in federal courts. (*Naranjo II*, *supra*, 40 Cal.App.5th at pp. 467–471.) We granted review to consider the issue.

## II.

California's meal and rest break requirements date back to 1916 and 1932, respectively, when the newly created IWC included the requirements in a series of wage orders regulating terms and conditions of employment in various industries and occupations. (*Murphy v. Kenneth Cole Productions, Inc.*, *supra*, 40 Cal.4th at p. 1105 (*Murphy*); see *Brinker Restaurant Corp. v. Superior Court, supra*, 53 Cal.4th at p. 1017.) For most of the century following the promulgation of the break requirements, however, the law offered limited tools for enforcement: "The only remedy available to employees . . . was injunctive relief aimed at preventing future abuse." (*Murphy*, at p. 1105.)

In 2000, concerned that the injunctive remedy had not given employers enough incentive to comply with the law, the

IWC added a new monetary remedy: employees denied a meal or rest break on a given day would be due "one (1) hour of pay at the employee's regular rate of compensation." (IWC wage order No. 4-2001, §§ 11(B), 12(B); see *Ferra v. Loews Hollywood Hotel, LLC* (2021) 11 Cal.5th 858, 870; *Murphy*, *supra*, 40 Cal.4th at pp. 1105–1106, 1110.) The Legislature followed suit the same year by enacting Labor Code section 226.7 (Stats. 2000, ch. 876, § 7, p. 6509), providing that employers who unlawfully denied their employees a meal or rest period on any given day must pay the employees an "additional hour of pay" at their "regular rate" (Lab. Code, § 226.7, subd. (c) (section 226.7); see *Ferra*, at pp. 869–872).

The primary questions in this case concern the relationship between the premium pay provision of section 226.7, subdivision (c), and the provisions of the Labor Code governing the reporting of wages and timely payment of wages upon discharge or resignation. Spectrum did not seek review of the lower courts' determination that it violated state meal break requirements, so we take as settled that the class members are entitled to premium pay. It is likewise undisputed that Spectrum neither paid that premium pay nor reported it as earned on employee wage statements. When an employer unlawfully denies an employee a meal or rest period and thus becomes obligated to pay an extra hour's pay, can the employer be held liable under Labor Code section 203 if it fails to pay any unpaid missed break amounts within statutorily mandated deadlines? And can it be held liable under Labor Code section 226 if it fails to report that premium pay on a statutorily required wage statement? Spectrum argues the answer to each question is no. We address its contentions in turn, beginning

with an employer's prompt payment responsibilities. (See Lab. Code, §§ 201–203.)

## III.

## A.

When an employment relationship comes to an end, the Labor Code requires employers to promptly pay any unpaid wages to the departing employee. The law establishes different payment deadlines depending on the manner of departure. Labor Code section 201 establishes a baseline statutory deadline for paying employees who are discharged from their employment: upon termination, "wages earned and unpaid at the time of discharge are due and payable immediately." (Lab. Code, § 201, subd. (a).) Labor Code section 202 specifies the default deadline for paying employees who instead resign: immediately at the time of quitting, if the employee has given sufficient advance notice, and within 72 hours if the employee has not. (*Id.*, § 202, subd. (a).)[3] To enforce these deadlines, Labor Code section 203 prescribes a sanction for employers who "willfully fail[] to pay" the full amounts due: absent timely payment of "any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days." (*Id.*, § 203, subd. (a).) Section 203

---

[3]   Other adjacent statutes supply more specific rules for employees in particular industries. (See Lab. Code, §§ 201.3 [temporary employees], 201.5 [motion picture employees], 201.6 [photo shoot employees], 201.7 [oil drilling employees], 201.8 [pro baseball venue employees], 201.9 [concert event employees].)

penalties for willful delays in the payment of end-of-employment wages are commonly referred to as "waiting time penalties." (*Kim v. Reins International California, Inc.* (2020) 9 Cal.5th 73, 82.)

Naranjo's class claim alleges that: (1) under section 226.7 and the applicable wage order, Spectrum was obligated to pay premium pay for noncompliant meal periods (i.e., meal periods during which employees were required to work without a valid on-duty meal agreement in place); (2) Spectrum was obligated to make these payments in a timely manner upon discharge or quitting (see Lab. Code, §§ 201–202), but did not do so; and (3) this dereliction was willful, warranting imposition of waiting time penalties under Labor Code section 203. As noted, the trial court agreed with Naranjo that Spectrum owed premium pay and that untimely payments could trigger penalties but found none owed here because Spectrum's delay was not willful. The Court of Appeal affirmed, but on very different grounds; it concluded that even a willful failure to pay amounts owed under section 226.7 can never trigger section 203 waiting time penalties. (*Naranjo II*, *supra*, 40 Cal.App.5th at p. 474.)

The Court of Appeal began by observing that Labor Code section 203 imposes a penalty for the willful failure to timely pay "any *wages*." (Lab. Code, § 203, subd. (a), italics added.) The Labor Code defines the term "wages" to include "all amounts for labor performed by employees of every description, whether the amount is fixed or ascertained by the standard of time, task, piece, commission basis, or other method of calculation." (Lab. Code, § 200, subd. (a).) The Court of Appeal reasoned that payment under section 226.7 is unambiguously beyond the reach of the wages definition because it is a legal remedy, not payment for labor: The premium pay is due employees not for

8

work they performed but as a sanction on account of "the employer's recalcitrance" regarding meal breaks. (*Naranjo II*, *supra*, 40 Cal.App.5th at p. 473.) We now hold this was error.

The Court of Appeal was correct that premium pay is a statutory remedy for a legal violation. But the court's further conclusion that premium pay cannot constitute wages rests on a false dichotomy: that a payment must be either a legal remedy or wages. For these purposes, section 226.7 is both. That is because under the relevant statute and wage order, an employee becomes entitled to premium pay for missed or noncompliant meal and rest breaks precisely because she was required to work when she should have been relieved of duty: required to work too long into a shift without a meal break; required in whole or part to work through a break; or, as was the case here, required to remain on duty without an appropriate agreement in place authorizing on-duty meal breaks.[4] (IWC wage order No. 4-2001, § 11(A), (B); see § 226.7, subd. (c); *Donohue v. AMN Services, LLC* (2021) 11 Cal.5th 58, 62.)

The premium pay due for the deprivation is certainly designed to compensate employees for hardships the Legislature concluded employees should not be made to suffer. But when those hardships include rendering work, the pay owed can equally be viewed as wages. As noted, the Labor Code defines

---

[4] By law, remaining on duty for the benefit of one's employer is compensable work. (See IWC wage order No. 4-2001, § 11(A) [if an employee is required to remain on duty, "the meal period shall be considered an 'on duty' meal period and counted as time worked"]; *Augustus v. ABM Security Services, Inc.* (2016) 2 Cal.5th 257, 265–266 [if an employer "require[s] employees to remain on duty during breaks," that time "plainly require[s] payment of wages"].)

the term broadly, to encompass "amounts for labor performed . . . of every description." (Lab. Code, § 200, subd. (a).) An employee who remains on duty during lunch is providing the employer services; so too the employee who works without relief past the point when permission to stop to eat or rest was legally required. Section 226.7 reflects a determination that work in such circumstances is worth more — or should cost the employer more — than other work, and so requires payment of a premium.

In this respect, missed-break premium pay is comparable to other forms of payment for working under conditions of hardship. Take overtime premium pay, for example: An employer who requires an employee to work more hours than the Legislature has determined is generally desirable must pay extra for the privilege, both to compensate the employee for the hardship incident to such work and to deter the employer from routinely imposing such obligations. (See *Murphy*, *supra*, 40 Cal.4th at p. 1109 ["while [overtime pay's] central purpose is to compensate employees for their time, it also serves a secondary function of shaping employer conduct"]; *id.* at p. 1110 [missed-break premium pay is intended "to compensate employees, while also acting as an incentive for employers to comply with labor standards"].) And precisely because it compensates the employee for work, overtime premium pay has always also been understood as wages for purposes of Labor Code section 200 and related statutes. (*Murphy*, at p. 1109 ["overtime pay is considered a wage"]; see, e.g., *Ghory v. Al-Lahham* (1989) 209 Cal.App.3d 1487, 1492 [applying Lab. Code, § 203 to nonpayment of overtime wages]; *Takacs v. A.G. Edwards and Sons, Inc.* (S.D.Cal. 2006) 444 F.Supp.2d 1100, 1125 [plain language of Lab. Code, § 200 reaches overtime wages].)

True, the hour of premium pay here, unlike overtime, is payable as a lump sum for a missed break of any duration; it is not paid pro rata. But premium pay is not unique in this respect; the law treats as wages many types of compensation for labor where the amount of money in question lacks a perfect one-to-one correlation with the amount of time worked. Take, for example, reporting-time pay: An employee who reports for duty but is given less than half a day's work is generally guaranteed no less than two hours or a half-day's pay as a reporting time premium, without regard to the precise number of hours worked. (IWC wage order No. 4-2001, § 5(A); see *Shine v. Williams-Sonoma, Inc.* (2018) 23 Cal.App.5th 1070, 1077 ["reporting-time pay is a form of wages"].) Or split-shift pay: An employee who works a split shift is entitled to an additional hour of pay over and above the minimum wage for that day, again without a pro rata relation to the number of hours worked. (IWC wage order No. 4-2001, § 4(C); see *Caliber Bodyworks, Inc. v. Superior Court* (2005) 134 Cal.App.4th 365, 386 [split-shift premium is wages].) The manner in which the pay accrues does not in itself determine whether it is designed to compensate for labor.

Section 226.7 missed-break premium pay does differ from these examples in that it aims to remedy a legal violation. The law permits an employer to allow an employee to work overtime hours, or to work a split shift, provided the employee is paid extra for it, but the law generally does not permit an employer to deprive an employee of a meal or rest break. But why should this difference matter? That missed-break premium pay serves as a remedy for a legal violation does not change the fact that the premium pay also compensates for labor performed under conditions of hardship. One need not exclude the other. The

Legislature is free, if it so chooses, to establish a remedy for the violation that takes the form of a requirement to pay additional compensation for services provided under such disfavored conditions. That is what it has done in section 226.7. (See *Kim v. Reins International California, Inc.*, *supra*, 9 Cal.5th at p. 84 ["additional hour of wages" is the prescribed "remedy for failing to provide meal and rest breaks"].)

These are not new observations. We made essentially the same points in *Murphy*, *supra*, 40 Cal.4th 1094, where we considered the applicable statute of limitations for claims that an employee had been denied meal or rest breaks. Because Code of Civil Procedure section 340 prescribes one period for penalty claims, and Code of Civil Procedure section 338 provides another for statutory liabilities that are not penalties, we needed to determine whether the remedy for a missed break is an ordinary statutory liability or a penalty. We concluded the Legislature intended for the section 226.7 payment to constitute wage compensation and not a penalty. (*Murphy*, at pp. 1099, 1103.)

We explained there, as we have here, that the " 'additional hour of pay' " provided by section 226.7 can be understood as "a wage to compensate employees for the work" they performed during a meal or rest period (*Murphy*, *supra*, 40 Cal.4th at p. 1104), much as overtime pay is considered wages to compensate employees for work performed in excess of the number of hours the Legislature deems desirable (*id.* at p. 1109). Indeed, we noted that the IWC commissioners who first decided to adopt the " 'hour of pay' remedy" for meal and rest break violations had made this very same comparison. (*Ibid.*; see *id.* at pp. 1109–1110.) We also noted that during the drafting process, the Legislature "eliminated the requirement that an employee file an enforcement action, instead creating an

affirmative obligation on the employer to pay the employee one hour of pay," an obligation that makes the employee entitled to missed-break premium pay "immediately upon being forced to miss a rest or meal period." (*Id.* at p. 1108.) "In that way," we said, "a payment owed pursuant to section 226.7 is akin to an employee's immediate entitlement to payment of wages or for overtime." (*Ibid.*) We observed that "the amount of the payment is linked to an employee's rate of compensation, rather than a prescribed fixed amount," a method of calculation that "further supports the position that section 226.7 payments are a form of wages." (*Id.* at p. 1114.) Finally, we explained that, as a functional matter, neither any ancillary impact in shaping employer behavior, nor the fact premium pay is not calculated based on the amount of rest lost, precludes a determination that "the 'additional hour of pay' " provided for by section 226.7 "is a premium wage intended to compensate employees, not a penalty." (*Murphy*, at p. 1114.)

Notwithstanding *Murphy*'s unambiguous pronouncement that section 226.7 premium pay is indeed a wage designed to compensate employees for work, Spectrum argues that *Murphy* somehow hurts the case for treating premium pay as wages rather than helping it. In support of this rather curious argument, Spectrum fixates on language describing missed-break premium pay, like overtime pay or split shift pay, as "compensat[ing] the employee for events *other than time spent working*" (*Murphy*, *supra*, 40 Cal.4th at p. 1113, italics added; accord, *Ferra v. Loews Hollywood Hotel, LLC*, *supra*, 11 Cal.5th at p. 876), which Spectrum understands to mean that premium pay is not actually compensation for work. Of course, Spectrum reads the language out of context and so misunderstands it. The passage responded to an argument that premium pay must be a

penalty because "it is imposed without reference to actual damage, since an hour of pay is owed whether the employee has missed an unpaid 30-minute meal period, two paid 10-minute rest periods, or some combination thereof." (*Murphy*, at p. 1112.) The court explained that while it is true the amount of premium pay is not calibrated to compensate the employee according to the specific amount of time spent working, the same is true of other forms of wage compensation, such as split-shift pay, that also compensate for particular hardships accompanying the work performed. (*Id.* at p. 1113.) The amount of missed-break premium pay owed may be based on considerations beyond simply the amount of time spent working, but that does not alter the conclusion that it constitutes compensation for work, like other forms of wages. (*Id.* at p. 1114.)

Spectrum also seeks to limit *Murphy* on the ground that it was a case about the statute of limitations, not any provision of the Labor Code governing the payment or reporting of wages. On this point, at least, Spectrum is correct. But nothing in *Murphy*'s conclusion that premium pay constitutes wages was specific to the statute of limitations context; the conclusion instead rested on consideration of the text of Labor Code sections 200 and 226.7, as well as the legislative history underlying section 226.7. Those are the very same provisions at issue here, and they are equally susceptible to the interpretation that *Murphy* gave them, for the reasons *Murphy* gave, when we consider how those provisions interact with the Labor Code's prompt wage payment requirements.

The interpretation makes sense in this statutory context. As explained above, the Legislature requires employers to pay missed-break premium pay on an ongoing, running basis

(*Murphy*, *supra*, 40 Cal.4th at p. 1108), just like other forms of wages (see Lab. Code, § 204). It stands to reason that, just like other forms of wages, any unpaid premium pay must be paid promptly once an employee leaves the job. And when an employer willfully fails to comply with this obligation, making penalties available serves the purpose underlying Labor Code section 203: to incentivize employers to pay end-of-employment compensation when it is due, rather than forcing employees to seek administrative relief or to go to court. (*McLean v. State of California* (2016) 1 Cal.5th 615, 626; *Pineda v. Bank of America, N.A.* (2010) 50 Cal.4th 1389, 1400; *Smith v. Superior Court* (2006) 39 Cal.4th 77, 82.) By incentivizing employers to pay missed-break premium pay immediately, section 203 also enhances the effectiveness of the section 226.7 premium itself, which is designed in part to discourage employers from depriving employees of breaks in the first place. (*Murphy*, at pp. 1110–1111.)

## B.

Spectrum offers various additional arguments for why missed-break premium pay should not be subject to the Labor Code's timing requirements for the payment of wages at the end of employment. The arguments are unpersuasive.

Spectrum's primary argument is that treating premium pay as wages is inconsistent with our post-*Murphy* decision in *Kirby v. Immoos Fire Protection, Inc.* (2012) 53 Cal.4th 1244 (*Kirby*). *Kirby* considered whether an action under section 226.7 was "an 'action brought for the nonpayment of wages' " for purposes of fee-shifting under Labor Code section 218.5. (*Kirby*, at p. 1251.) We explained that it was not: "Section 226.7 is not aimed at protecting or providing employees' wages. Instead, the

statute is primarily concerned with ensuring the health and welfare of employees by requiring that employers provide meal and rest periods as mandated by the IWC." (*Kirby*, at p. 1255.) Consequently, we concluded, "a section 226.7 action is brought for the *nonprovision of meal and rest periods*, not for the 'nonpayment of wages.'" (*Kirby*, at p. 1255.)

Spectrum reads *Kirby* as holding that missed-break premium pay is not a wage for purposes of Labor Code section 218.5 and thus, more generally, is not a wage for all or most Labor Code purposes — notwithstanding the contrary analysis in *Murphy*, *supra*, 40 Cal.4th 1094. Variations on this theme appear in the opinions of a number of courts that have likewise read *Kirby* to mean that missed-break premium pay is not generally a wage. The Court of Appeal in this case summarized the chain of thought: "'[U]nder *Kirby*, the legal violation underlying a section 226.7 claim is the nonprovision of meal and rest periods and the corresponding failure to "ensur[e] the health and welfare of employees," not the nonpayment of wages.'" (*Naranjo II*, *supra*, 40 Cal.App.5th at pp. 469–470, quoting *Jones v. Spherion Staffing LLC* (C.D.Cal., Aug. 7, 2012, No. LA CV11-06462 JAK (JCx)) 2012 U.S.Dist. LEXIS 112396, at p. *21.) If a section 226.7 claim is an action for the deprivation of breaks, not the recovery of wages, then the payment promised by section 226.7 must not be a wage — but instead a statutory remedy "'calculated as a wage.'" (*Naranjo II*, at p. 470, quoting *Jones*, at p. *21; see *id.* at pp. 469–470 [discussing cases].) These courts have acknowledged that *Murphy*'s reasoning suggests otherwise but determined *Murphy* is not authoritative on the issue because it decided only whether premium pay was "more akin to a penalty

or a wage" for the narrow purpose of selecting an applicable statute of limitations. (*Jones*, at p. *25.)

These arguments misread *Kirby*. *Kirby* did not reject or limit *Murphy*'s characterization of section 226.7 premium pay as compensation for labor. On the contrary, *Kirby* recited *Murphy*'s characterization without any apparent disapproval. (*Kirby*, *supra*, 53 Cal.4th at p. 1257.) *Kirby* then went on to distinguish the inquiry in *Murphy* from the inquiry called for under Labor Code section 218.5. *Kirby* explained that our prior conclusion that premium pay is a wage did not necessarily mean that an action under section 226.7 is an action for nonpayment of wages under section 218.5. The characterization of the nature of an action under section 218.5 turns instead on the nature of the underlying legal violation the action seeks to remedy, not the form of relief that might be available to cure that violation. (*Kirby*, at pp. 1256–1257.) And "[t]o say that a section 226.7 remedy is a wage," as we did in *Murphy*, "is not to say that the *legal violation* triggering the remedy is nonpayment of wages," as opposed to the deprivation of meal or rest breaks. (*Kirby*, at p. 1257.)[5]

---

[5] To see *Kirby*'s point, recall that premium pay is but one available remedy for a violation of section 226.7. Then consider a situation in which an employer routinely denies meal breaks but (unlike Spectrum) pays its employees the premium pay due under section 226.7. An aggrieved employee might seek an injunction to stop the underlying unlawful practice. No wages are at stake; the action is simply one to ensure that, going forward, employees receive the breaks to which they are lawfully entitled. Such a claim certainly would not be an "action for the nonpayment of wages." The holding of *Kirby* reflects a conclusion that a case in which premium pay is withheld and

In so distinguishing *Murphy*, *Kirby* did not repudiate or narrow that case's characterization of section 226.7 pay as a wage. It merely held that the nature of the remedy does not dictate the proper characterization of the legal violation triggering the remedy under section 226.7. The reverse is equally true: Even if the underlying violation is a failure to provide healthy working conditions by requiring excess work in place of rest, not failure to pay for labor (as *Kirby* says), the Legislature is still free to adopt as a remedy payment of additional wages for that excess labor (as *Murphy* said before it).

As Spectrum notes, *Kirby* did also distinguish actions under section 226.7 from actions under Labor Code sections 201 and 202. (*Kirby*, *supra*, 53 Cal.4th at pp. 1255–1256.) Unlike an employee suing under section 226.7, an employee suing for failure to pay wages by the deadline established in the latter statutes *is* suing for nonpayment of wages for purposes of an attorney fee award under Labor Code section 218.5. (*Kirby*, at p. 1256.) But this case does not concern attorney fees under Labor Code section 218.5, nor does it otherwise turn on the nature of Naranjo's action, so that distinction is not meaningful here.

Spectrum disagrees on this point, arguing that the nature of a section 226.7 missed-break action is critical to the operation of Labor Code section 203's waiting-time penalty provision, just

---

sought as a remedy should be treated no differently: "whether or not [premium pay] has been paid is irrelevant to whether section 226.7 was violated . . . and an employer's provision of an additional hour of pay does not excuse a section 226.7 violation." (*Kirby*, *supra*, 53 Cal.4th at p. 1256.)

as it is critical to the operation of the attorney fee statute at issue in *Kirby*. Spectrum borrows this argument from *Ling v. P.F. Chang's China Bistro, Inc.* (2016) 245 Cal.App.4th 1242 (*Ling*), which in turn focused on the language of Labor Code section 203, subdivision (b). That provision states: "Suit may be filed for these penalties at any time before the expiration of the statute of limitations on an action for the wages from which the penalties arise." (Lab. Code, § 203, subd. (b).) The *Ling* court reasoned: that this provision makes any claim for penalties under section 203 derivative of an underlying action for wages; that under *Kirby*, a claim for section 226.7 premium pay is not an action for wages; and thus that no section 203 waiting time penalties can lie based on failure to promptly pay the extra money owed for missed breaks under section 226.7. (*Ling*, at p. 1261.)

The argument reads more into Labor Code section 203, subdivision (b), than the provision will bear. As already explained, the conditions for substantive entitlement to waiting time penalties are defined in subdivision (a) of Labor Code section 203, which speaks simply of the willful nonpayment of "any wages of an employee who is discharged or who quits." (Lab. Code, § 203, subd. (a).) Subdivision (b) was added in 1939 to extend the statute of limitations for recovering the waiting time penalties provided for in subdivision (a) to equal that of the limitations period for recovering the underlying unpaid wages. (Stats. 1939, ch. 1096, § 1, p. 3026; *Pineda v. Bank of America, N.A.*, *supra*, 50 Cal.4th at p. 1400.) In describing the latter limitations period, subdivision (b) of section 203 does use the phrase "action for the wages." But whereas Labor Code section 218.5 focuses on the nature of the legal violation challenged (an "action *brought for the nonpayment* of wages," italics added) to

limit the scope of its application, the wording of Labor Code section 203, subdivision (b), evinces no similar concern with categorizing suits according to the nature of the alleged legal violation in order to limit its scope. The rest of the statute illustrates why this would be an unlikely reading: In contrast to subdivision (a), subdivision (b)'s only function is to extend the limitations period of a suit to recover waiting time penalties to match the timing of any suit seeking the recovery of the underlying unpaid wages. Nothing about that function suggests the alleged reasons why an employer is obliged to pay the wages in the first place should matter. We decline to interpret a limitations provision enacted to extend the reach of a penalty designed to deter nonpayment (*Pineda*, at p. 1400) to bar relief entirely in a class of cases concerning the willful nonpayment of wages.

Spectrum offers various other textual arguments. It observes, for example, that the Legislature has amended Labor Code section 203 on several occasions to specify additional statutes imposing duties to pay, the violation of which may give rise to penalties. (See, e.g., Stats. 2008, ch. 169, § 2, pp. 555–556; Stats. 2014, ch. 210, § 1; Stats. 2019, ch. 253, § 3; Stats. 2019, ch. 700, § 2.5.) The cited amendments added references to Labor Code sections 201.3, 201.6, 201.8, and 201.9, so that the first sentence of section 203, subdivision (a), now reads: "If an employer willfully fails to pay, without abatement or reduction, in accordance with Sections 201, 201.3, 201.5, 201.6, 201.8, 201.9, 202, and 205.5, any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days." The

Legislature has not, however, amended the statute to add reference to section 226.7. From this, Spectrum infers that the Legislature did not intend Labor Code section 203 to apply to nonpayment of section 226.7 premium pay.

The inference is unsound. The statutes to which the Legislature added references share a common feature: They are all statutes that set particular deadlines for paying employees in certain industries or occupations. (See, e.g., Lab. Code, §§ 201.5 [deadline for motion picture employees], 201.6 [deadline for photo shoot employees].) The other statutes listed in Labor Code section 203 likewise set out the deadlines for payment in certain situations, including Labor Code section 201 (general deadline for payment on discharge) and Labor Code section 202 (general deadline for payment on resignation). Labor Code section 203 says in essence that if an employer fails to meet the deadlines for payment established in section 201, section 202, or any of the other statutes establishing specific deadlines, the employer may be liable for penalties. None of the listed statutes addresses the question of what amounts, precisely, the employer must pay by the specified deadlines. That question is instead answered by Labor Code section 203 itself, which uses the unelaborated phrase "any wages"; by Labor Code section 200, which defines what "wages" means; and by a host of other statutes, wage order provisions, collective bargaining agreements, and individual contracts that spell out what an employer must pay its employees for their work. That Labor Code section 203 does not cite section 226.7 by name is no more remarkable than the fact that the statute does not list any

of these many other sources defining what an employer must pay to its employees upon their departure from employment.[6]

Next, Spectrum emphasizes that the text of section 226.7 uses the term "pay" rather than "wages": "the employer shall pay the employee one additional hour of *pay* at the employee's regular rate of compensation." (§ 226.7, subd. (c), italics added.) But the difference in wording is not significant. Directly addressing this point in *Murphy*, we explained that "the Legislature has frequently used the words 'pay' or 'compensation' in the Labor Code as synonyms for 'wages.'" (*Murphy*, *supra*, 40 Cal.4th at p. 1104, fn. 6 [listing examples]; see *Ferra v. Loews Hollywood Hotel, LLC*, *supra*, 11 Cal.5th at pp. 873, 874 ["pay" and "compensation" used "interchangeably" in § 226.7].)

As a final textual argument, Spectrum observes that Labor Code section 201 requires immediate payment of any "wages *earned* and unpaid *at the time of discharge*." (Lab. Code, § 201, subd. (a), italics added.) Premium pay, Spectrum reasons, is not truly "earned" because it is not due on account of an employee's labor, but for other reasons. Further, Spectrum argues, such pay is not earned as of "the time of discharge," but

---

[6] The Court of Appeal made a different point about the Legislature's failure to amend the Labor Code to expressly account for section 226.7: It observed that the Legislature had not amended Labor Code section 200 to include missed-break premium pay in the definition of wages in the wake of *Murphy*. (*Naranjo II*, *supra*, 40 Cal.App.5th at p. 473.) But no amendment was needed; as *Murphy* itself explained, missed-break premium pay already fit comfortably within the existing definition of wages. (*Murphy*, *supra*, 40 Cal.4th at pp. 1103–1104.)

is only due if and when a court determines meal and rest break violations have occurred. Spectrum is wrong on both points.

For starters, the common meaning of the term "earned" is not limited to amounts accrued on the basis of particular increments of time worked; an amount can be "earned" whenever it is "acquire[d] or deserve[d] as a result of effort or action." (American Heritage Dict. (5th ed. 2016) p. 561.) The employee who remains on duty without a timely break has "earned" premium pay within any ordinary sense of the word. And any argument that the Legislature intended the use of "earned" in a more specialized or restrictive sense runs aground upon examination of the statutory scheme. Notably, the closely related Labor Code section 202, governing the timing of payment upon an employee's resignation, does not use the word "earned." (See Lab. Code, § 202, subd. (a) [establishing timing for payment of "wages"].) No reason appears why the Labor Code would impose different requirements for what must be paid depending on whether an employee has quit or been fired, and Spectrum offers none. This is because the difference in wording does not, in fact, create a difference in meaning, and so premium wages owed for working without a break must be timely paid upon discharge, just as they must be paid upon resignation.

As for Spectrum's second point, we have already explained why Spectrum is wrong to presume that premium pay is not owed at the time of discharge, but only once a court compels its payment. During the drafting process, the Legislature eliminated the need for employees to file enforcement actions to obtain missed-break premium pay. Instead, under the law as enacted, "an employee is entitled to the additional hour of pay *immediately* upon being forced to miss a rest or meal period."

(*Murphy*, *supra*, 40 Cal.4th at p. 1108, italics added.)  In other words, the duty to pay attaches before the time of discharge and does not depend on a prior court determination.

Spectrum next argues that authorizing Labor Code section 203 waiting time penalties for willful failure to make prompt payment would contravene a supposed legislative intent to make the premium pay in section 226.7 a precise and exclusive remedy for missed breaks.  Spectrum observes that the hour of pay remedy was the product of a lengthy drafting process in which the specified remedy for denial of meal or rest breaks went through multiple revisions before the Legislature settled on the eventual compensation (see *Murphy*, *supra*, 40 Cal.4th at pp. 1106–1108), and that *Murphy* characterized this remedy as the "sole compensation" for denial of a meal or rest period (*id.* at p. 1107; see *id.* at p. 1104 ["only compensation"]).  According to Spectrum, to layer waiting time penalties on top would subvert this carefully calibrated remedial choice.

We disagree.  Spectrum's argument assumes that waiting time penalties aim at the same conduct as premium pay.  They do not.  One is a remedy for the deprivation of required rest or meal breaks; the other is a remedy for the failure to make prompt payment of unpaid wages when the employee leaves the job.  One violation does not necessarily imply the other:  An employer might deprive an employee of a break and then promptly and timely pay that employee the premium pay to which section 226.7 entitled the employee.  (See, e.g., *Donohue v. AMN Services, LLC*, *supra*, 11 Cal.5th at pp. 62–63 [describing employer that did so]; *Ferra v. Loews Hollywood Hotel, LLC*, *supra*, 11 Cal.5th at p. 864 [same].)  In that instance, there is only one statutory violation, and the premium pay compensates for that violation.  When, by contrast, an

employer *both* denies the employee a meal break *and* fails to provide the employee the premium wages due in a timely fashion upon the employee's termination, the failure to make timely payment is a second, distinct violation, for which there may be additional remedies available. It in no way upsets the legislative scheme to conclude that when there is a second, distinct violation of Labor Code requirements, there will be a second, distinct remedy for that further breach.[7]

Finally, Spectrum urges that the weight of lower court authority indirectly supports its view: Because the Legislature has taken no action in response to the existing case law, Spectrum argues, the Legislature has effectively acquiesced in its conclusions. Legislative acquiescence arguments of this type rarely do much to persuade; even when a clear consensus has emerged in the appellate case law, we have noted that legislative inaction supplies only a " ' " ' "weak reed upon which to lean" ' . . . ." ' " in inferring legislative intent. (*Mendoza v. Fonseca McElroy Grinding Co., Inc.* (2021) 11 Cal.5th 1118, 1139.) Here, there is not even a clear consensus. Only three

---

[7] Drawing on an example posed in *Jones v. Spherion Staffing LLC, supra,* 2012 U.S.Dist. LEXIS 112396, at page *9, Spectrum describes a scenario in which denial of a single meal period could lead to liability for premium pay under section 226.7, plus waiting time penalties under Labor Code section 203, plus actual damages or statutory penalties under Labor Code section 226, plus a civil penalty under the Labor Code's Private Attorneys General Act of 2004 (Lab. Code, § 2698 et seq.). But in this hypothetical scenario, an employer could chop off liability at the root by simply paying an hour of premium pay in the next pay cycle and recording such pay in the wage statement. All the additional remedies arise only if an employer doubles down by not doing so, and then by "willfully" (Lab. Code, § 203, subd. (a)) refusing to pay even after termination.

Courts of Appeal have examined the issue we now consider. All three cases were decided in the last five years; all contain a page or less of analysis buried in lengthy opinions focused on other questions; and two of those three (including the Court of Appeal decision in this very case) are not even final but are under review in this court. (See *Betancourt v. OS Restaurant Services, LLC* (2020) 49 Cal.App.5th 240, review granted Aug. 19, 2020, S262866; see also *Ling, supra*, 245 Cal.App.4th 1242.) Numerous federal district court decisions have also considered the question but, as Spectrum acknowledges, these courts are deeply split over whether unpaid missed-break premium pay may support a Labor Code section 203 claim, with many decisions on both sides of the issue. (*Stewart v. San Luis Ambulance, Inc.* (9th Cir. 2017) 878 F.3d 883, 887–888 [noting federal split]; compare, e.g., *In re Autozone, Inc.* (N.D.Cal., Aug. 10, 2016, No. 3:10-md-02159-CRB) 2016 U.S.Dist. LEXIS 105746, *19–*24 [recovery available under Lab. Code, § 203] with *Jones v. Spherion Staffing LLC, supra*, 2012 U.S.Dist. LEXIS 112396, *21–*26 [no recovery under Lab. Code, § 203].) That the Legislature has failed to act in the face of these conflicting authorities tells us exactly nothing about its views.

In short, missed-break premium pay constitutes wages for purposes of Labor Code section 203, and so waiting time penalties are available under that statute if the premium pay is not timely paid. We disapprove *Ling v. P.F. Chang's China Bistro, Inc., supra*, 245 Cal.App.4th 1242, to the extent its discussion of Labor Code sections 203 and 226.7 is inconsistent with this opinion.

## IV.

We turn now to the question of wage statements. The wage statement statute (Lab. Code, § 226) began as a simple requirement that employers report deductions from pay (see Stats. 1943, ch. 1027, § 1, p. 2965) but has since expanded to require a detailed list of information, including hours worked, wages earned, hourly rates, and employee- and employer-identifying information (Lab. Code, § 226, subd. (a); *Ward v. United Airlines, Inc.* (2020) 9 Cal.5th 732, 744–745 & fn. 3).[8] As particularly relevant here, Labor Code section 226 requires that an employer report both "gross wages earned" and "net wages earned." (Lab. Code, § 226, subd. (a)(1), (5).) To enforce this provision, the Legislature has provided that employees who are

---

[8] Subdivision (a) requires employers to provide employees at regular intervals "an accurate itemized statement in writing showing (1) gross wages earned, (2) total hours worked by the employee, except as provided in subdivision (j), (3) the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis, (4) all deductions, provided that all deductions made on written orders of the employee may be aggregated and shown as one item, (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid, (7) the name of the employee and only the last four digits of his or her social security number or an employee identification number other than a social security number, (8) the name and address of the legal entity that is the employer and, if the employer is a farm labor contractor, as defined in subdivision (b) of Section 1682, the name and address of the legal entity that secured the services of the employer, and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee and, beginning July 1, 2013, if the employer is a temporary services employer as defined in Section 201.3, the rate of pay and the total hours worked for each temporary services assignment." (Lab. Code, § 226, subd. (a).)

injured by a "knowing and intentional failure by an employer to comply with" this requirement may recover "the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000)" as well as "costs and reasonable attorney's fees." (*Id.*, subd. (e)(1).)

We must consider whether the requirement that "wages" be reported extends to payments under section 226.7 for missed breaks. We have already explained that premium pay is fairly understood as falling within the Labor Code's general definition of wages. Spectrum makes various additional arguments for why premium pay should not be treated as reportable wages under Labor Code section 226, but those arguments fail to persuade.

As an initial matter, Spectrum observes that Labor Code section 226 lists many categories of information that must be reported but contains no separate requirement that missed-break premium pay be reported. This is true, but it is not meaningful; the statute likewise contains no provision expressly calling out any other specific sorts of pay, such as overtime pay under Labor Code section 510, that compensate employees for their work and therefore must be reported. (See, e.g., *General Atomics v. Superior Court* (2021) 64 Cal.App.5th 987, 991 [wage statement that shows overtime hours worked and overtime premiums complies with Lab. Code, § 226].)

Spectrum also emphasizes that Labor Code section 226 requires the reporting of "wages *earned*" (Lab. Code, § 226, subd. (a), italics added) and argues that even if missed-break premium

pay is a wage, it is not "earned" because it is not pay for time spent working. We have discussed and rejected this same argument in connection with Labor Code section 203, and it has no greater force here. (See *ante*, pp. 22–23.)

It is true, as Spectrum says, that the requirement to report "wages earned" predates the enactment of section 226.7 and the creation of a premium pay remedy. But nothing in the text of Labor Code section 226 suggests that the reporting requirement is limited to categories of compensation that were known at the time the reporting requirement was enacted. And Naranjo's broader understanding of the scope of section 226's obligation to report wages earned fits better with the "core purpose" behind requiring an employer to " ' "document[] the basis of the employee compensation payments" ' " — to enable employees to verify they have been compensated properly, without shortchanging or improper deduction. (*Ward v. United Airlines, Inc.*, *supra*, 9 Cal.5th at p. 752; see *id.* at pp. 752–753, 755.)[9] This purpose would not be served by reading into the choice of the word "earned" a distinction between different kinds of wages presently owed, depending on how the employee became entitled to them — whether because of missed breaks or otherwise.

---

[9] The requirement that both "gross wages earned" and "net wages earned" be listed was added to section 226 in 1976. (Stats. 1976, ch. 832, § 1, pp. 1899–1900.) The Assembly Committee on Labor Relations described the purpose of the added detail as "insur[ing] that employees are adequately informed of compensation received and are not shortchanged by their employers." (Assem. Com. on Lab. Rel., analysis of Assem. Bill No. 3731 (1975–1976 Reg. Sess.) as amended May 12, 1976, p. 1; accord, Assem. 3d reading analysis of Assem. Bill No. 3731 (1975–1976 Reg. Sess.) as amended May 21, 1976, p. 1.)

Spectrum next argues it cannot be liable for violating Labor Code section 226 based on failure to report missed-break premium pay on employee wage statements because these amounts were not actually paid, but were instead (illegally) withheld, and nothing in the statute requires that an employer report amounts not paid during a pay period.

This argument ignores the statutory text. Labor Code section 226 does not require employers to report only those amounts it deigns to pay; rather, it requires an employer to accompany "each payment of wages" with "an accurate itemized statement" specifying, among other details, the "gross wages earned" and "net wages earned" — in other words, all amounts earned and now owing, not just those amounts actually paid. (Lab. Code, § 226, subd. (a).) A statement that conceals amounts earned, on the ground that they also were not paid, is not an accurate statement, and it does not comply with the statute.[10]

Spectrum looks to case law to support its unlikely reading of Labor Code section 226 but finds no help there. Though the Court of Appeal in this case agreed with Spectrum — incorrectly — that missed-break premium pay cannot constitute wages, the court still recognized that an itemized wage statement that "omits gross and net 'wages earned'" would run afoul of Labor Code section 226's requirements. (*Naranjo II*, *supra*, 40 Cal.App.5th at p. 474.) The same is true of *Maldonado*

---

[10] Permitting employers to conceal underpayments — including owed but unpaid missed-break premium pay — would also impede employees' ability to verify they have been paid properly and, as amicus curiae the Division of Labor Standards Enforcement observes, would undermine administrative enforcement of wage and hour protections.

*v. Epsilon Plastics, Inc.* (2018) 22 Cal.App.5th 1308 (*Maldonado*), which Spectrum reads as establishing that only paid amounts need be reported. In *Maldonado*, the Court of Appeal addressed a claim that the employer had misreported overtime hours as regular hours and failed to report the corresponding overtime premiums as wages. Contrary to Spectrum's view, the court in *Maldonado*, too, recognized that "[w]age statements should include the hours *worked* at each rate and the wages *earned*" — not just wages actually paid. (*Id.* at p. 1336.) The court denied recovery under Labor Code section 226 not because employers are permitted to omit earned but unpaid wages but because the plaintiff employees could not show they were injured, under section 226's specific definition of injury, by the particular wage statement inaccuracies there at issue. (*Maldonado*, at pp. 1334–1337; see Lab. Code, § 226, subd. (e).)

Leaving aside whether *Maldonado*, *supra*, 22 Cal.App.5th 1308 correctly determined that no injury could be shown on the facts before it, no similar shortcoming is present here. The trial court found that Spectrum's employees had "clearly suffered an injury since they could not determine from the wage statements the correct wages to which they were entitled." A brief review of the statute shows why that conclusion was correct: Labor Code section 226, subdivision (e)(2) deems injury has occurred whenever the employee cannot easily determine certain required information, including rates of pay and all "hours worked" (*id.*, subd. (a)(9)) at each rate, that would allow the employee to ascertain whether the payment is correct (see *id.*, subd. (e)(2)(B)(i)). Section 226.7 requires an employer to pay "one additional hour of pay" for each day in which a lawful break is not provided. (§ 226.7, subd. (c).) In that situation, both that

additional credited hour of work and the corresponding premium pay owed must be reported on the wage statement. Failure to do so deprives the employee of information needed to evaluate whether the payment is correct, and in so doing results in injury under the terms of the statute. (See Lab. Code, § 226, subd. (e)(2)(B).)

The other case Spectrum relies on, *Soto v. Motel 6 Operating, L.P.* (2016) 4 Cal.App.5th 385, is similarly unhelpful to its argument. *Soto* involved an employee's claim that wage statements should report vacation pay. Under the Labor Code, vacation pay is considered a deferred wage that accrues and vests as employment continues but does not actually become a quantifiable wage until the end of employment, when unused vacation time converts into an owed wage. (*Id.* at pp. 391–392; see Lab. Code, § 227.3.) *Soto* rejected the claim that vacation pay must be reported on an ongoing basis, explaining that under Labor Code section 226 a statement need only "*document* the *paid wages*" during a pay period. (*Soto*, at p. 392.) Spectrum seizes on the italicized language. But read in context, *Soto* was only clarifying that the wage statement need not reflect compensation vesting but not owed and due during the given pay period — such as the monetary value of an employee's accrued vacation balance. *Soto* did not purport to hold wage statements need not reflect amounts that *are* owed and due during a pay period, like missed-break premium pay (see *Murphy*, *supra*, 40 Cal.4th at p. 1108 [premium pay is due "immediately"]), whenever an employer chooses not to pay them.

Finally, Spectrum again argues that the Legislature's inaction in the face of court rulings agreeing with its position on the reporting of missed-break premium pay demonstrates the Legislature's acquiescence to that position. But even more so

than for Labor Code section 203, there is no clear body of precedent to which the Legislature might be thought to have acquiesced. The Court of Appeal in this case is the only appellate court to have squarely addressed the Labor Code section 226 issue; the Court of Appeal's later opinion in *Betancourt v. OS Restaurant Services, LLC*, *supra*, 49 Cal.App.5th 240, review granted, simply agrees with the Court of Appeal in this case without offering any independent analysis of its own. And even Spectrum acknowledges that a split of authority has developed among the many federal district court cases to consider the question.

In sum, we hold that an employer's obligation under Labor Code section 226 to report wages earned includes an obligation to report premium pay for missed breaks. This means that, provided the conditions specified in the statute are otherwise met, failure to report premium pay for missed breaks can support monetary liability under section 226 for failure to supply an accurate itemized statement reflecting an employee's gross wages earned, net wages earned, and credited hours worked.

## V.

We now turn to a question concerning the calculation of prejudgment interest. The trial court awarded Naranjo 10 percent prejudgment interest on his meal break claim. The Court of Appeal reversed with instructions to recalculate the award based on a 7 percent rate. (*Naranjo II*, *supra*, 40 Cal.App.5th at pp. 475–476.) The Court of Appeal was correct to identify 7 percent as the applicable rate.

The state Constitution establishes a default interest rate of 7 percent "upon the loan or forbearance of any money, goods,

33

or things in action, or on accounts after demand." (Cal. Const., art. XV, § 1.) Prevailing civil parties are entitled to this interest rate in the calculation of prejudgment interest absent a statute specifying a higher rate. (E.g., *Brown v. California Unemployment Ins. Appeals Bd.* (2018) 20 Cal.App.5th 1107, 1116; *Bullock v. Philip Morris USA, Inc.* (2011) 198 Cal.App.4th 543, 573; see also Civ. Code, § 1916.1.)

No statute specifies the rate of prejudgment interest for most tort or other noncontract claims, so, in such cases, the default constitutional rate of 7 percent typically applies. (See, e.g., *Michelson v. Hamada* (1994) 29 Cal.App.4th 1566, 1585 [applying 7 percent rate to fraud claim]; cf. Civ. Code, § 3291 [specifying 10 percent rate in personal injury action when a defendant rejects a settlement offer less favorable than the final judgment].) For many years, the same was true of contract claims. But in 1985, the Legislature enacted a special default rule governing such claims: "If a contract entered into after January 1, 1986, does not stipulate a legal rate of interest, the obligation shall bear interest at a rate of 10 percent per annum after a breach." (Civ. Code, § 3289, subd. (b), as amended by Stats. 1985, ch. 663, § 1, p. 2251, and Stats. 1986, ch. 176, § 1, p. 406.) Then, in 2000, as part of the same legislation that enacted section 226.7, the Legislature extended the higher contract claim interest rate to wage nonpayment actions. (Stats. 2000, ch. 876, § 5, p. 6508.) Labor Code section 218.6 provides: "In any action brought for the nonpayment of wages, the court shall award interest on all due and unpaid wages at the rate of interest specified in subdivision (b) of Section 3289 of the Civil Code" — i.e., 10 percent per annum.

The trial court in this case awarded prejudgment interest at this 10 percent rate. Although the trial court did not specify

the statutory authority for the award, the Court of Appeal assumed it was based on Labor Code section 218.6 and held this was error.  (*Naranjo II*, *supra*, 40 Cal.App.5th at p. 475.)

We agree section 218.6 is indeed inapplicable here.  As explained above, in *Kirby*, *supra*, 53 Cal.4th 1244, we concluded that the neighboring attorney fee-shifting statute, Labor Code section 218.5, was inapplicable to a section 226.7 suit because such an action "is brought for the nonprovision of meal and rest periods, not for the 'nonpayment of wages.' " (*Kirby*, at p. 1255, italics omitted.)  It follows that for purposes of prejudgment interest under Labor Code section 218.6, a section 226.7 suit is also not an "action brought for the nonpayment of wages," as section 218.6 requires, and so does not qualify for that statute's higher rate.

Naranjo contends, however, that the trial court's award of prejudgment interest should be upheld on other grounds.  Specifically, he argues the trial court's use of a 10 percent prejudgment interest rate is supported not by Labor Code section 218.6 but directly by the contract-rate statute, Civil Code section 3289, subdivision (b).  The complaint alleges a violation of a statutory and regulatory requirement, not a breach of any term of Spectrum's agreements with its employees; at no point has Naranjo asserted claims for breach of contract based on the meal break violations.  But Naranjo argues that section 3289, subdivision (b) nonetheless applies because every contract of employment implicitly incorporates mandatory statutory duties, including here the duty to pay premium pay if an employee is unlawfully deprived of a meal or rest break, so that a violation of statute is also a breach of contract.

Naranjo relies for this argument on *Bell v. Farmers Ins. Exchange* (2006) 135 Cal.App.4th 1138 (*Bell*), which considered the prejudgment interest rate applicable to claims for unpaid overtime wages accruing both before and after Labor Code section 218.6 took effect. For claims accruing after section 218.6's effective date, the statute specified the interest rate was 10 percent. Even for claims accruing before section 218.6 took effect, however, the Court of Appeal applied the same rate. Any objection to that rate had been waived by the defendant, and in any event the language of section 218.6 supported retroactive application to wage claims accruing before enactment. (*Bell*, at pp. 1145–1146.) The court went on to conclude, as a third basis for its decision, that the Legislature might also have thought Labor Code section 218.6 did not change existing law, because Civil Code section 3289, subdivision (b) already applied to claims of wage nonpayment, and merely intended the enactment as a clarification. *Bell* cited the common law principle that contracts, including employment contracts, must ordinarily " 'be held to have been made in the light of, and to have incorporated, the provisions of existing law.' " (*Bell*, at p. 1147, quoting *Lockheed Aircraft Corp. v. Superior Court* (1946) 28 Cal.2d 481, 486.) The *Bell* court acknowledged other cases treating suits for unpaid statutory wages as claims to enforce statutory obligations rather than contractual ones. (*Bell*, at p. 1148.) But the court deemed "more persuasive" case law implying that statutory duties like the duty to pay overtime could be incorporated into contracts. (*Id.* at p. 1149.) "At the very least," the court concluded, "the argument for the application of the breach-of-contract prejudgment interest rate of Civil Code section 3289 carries sufficient logic to support the assumption" that the legislative choice to extend this default breach-of-

36

contract rate to wage nonpayment actions in Labor Code section 218.6 was intended merely as a clarification of existing law. (*Bell*, at p. 1149.)

The Court of Appeal in this case dismissed *Bell* as inapposite, reasoning that *Bell* is relevant only to wage suits covered by Labor Code section 218.6. (*Naranjo II*, *supra*, 40 Cal.App.5th at p. 475.) The court did not address Naranjo's argument that *Bell* could support a 10 percent rate in this case under Civil Code section 3289. But we nonetheless agree with the Court of Appeal that if Labor Code section 218.6 does not establish a 10 percent interest rate for missed-break premium pay awards, then *Bell* and Civil Code section 3289 do not justify that rate either.

As an initial matter, *Bell* itself was a case about the reach of Labor Code section 218.6. *Bell* arrived at no definitive conclusions about whether the 10 percent contract rate would have applied in wage nonpayment actions had section 218.6 never been enacted. The court in *Bell* recognized there was no pre-section 218.6 precedent adopting or applying the contract rate in wage nonpayment cases. (*Bell*, *supra*, 135 Cal.App.4th at p. 1147.) The court also recognized that there were conflicting authorities on the proper characterization of such wage nonpayment actions: for statute of limitations purposes, for example, courts have held that the three-year statute governing actions for statutory liabilities applies rather than the two-year statute for unwritten contracts. (*Id.* at p. 1148.) And treating a statutory claim for wage underpayment as a contract claim for interest purposes, even when no statute directs that treatment, would allow parties to have their cake and eat it too. A party to an oral contract could recover an extra year of premium pay because the liability is created by statute, not contract (Code

Civ. Proc., §§ 338, 339; see *Murphy*, *supra*, 40 Cal.4th at pp. 1099, 1102 [applying three-year period to missed break pay]; *Aubry v. Goldhor* (1988) 201 Cal.App.3d 399, 404–406 [applying three-year period to unpaid overtime]) — while simultaneously receiving prejudgment interest at the higher 10 percent rate on the theory that the liability is created by contract and not simply by statute (Civ. Code, § 3289, subd. (b)). The court in *Bell* did not resolve this seeming inconsistency. And in the end, the court did not definitively hold that the statutory contract rate would have applied in overtime suits even if Labor Code section 218.6 had never been enacted — it said only that the Legislature might well have thought so. (*Bell*, at pp. 1146, 1149.)

Whatever the merits of *Bell*'s reasoning with regard to overtime pay, that reasoning cannot be extended to nonpayment of section 226.7 premium pay, because the available evidence indicates the Legislature has not understood the failure to pay missed-break premium pay as a breach of contract subject to contract-rate interest. In the very legislation that enacted section 226.7, Assembly Bill No. 2509 (1999–2000 Reg. Sess.), the Legislature elected to adjust the prejudgment interest rate for certain wage and hour claims by incorporating Civil Code section 3289, subdivision (b)'s 10 percent rate. One provision enacted Labor Code section 218.6 (Stats. 2000, ch. 876, § 5, p. 6508), which, as discussed, is by its terms too narrow to reach missed-break premium-pay claims. Another provision amended an existing statute governing administrative claims for unpaid wages, Labor Code section 98.1, substituting the default contract rate for a repealed statutory rate for purposes of administrative awards of unpaid wages. (Stats. 2000, ch. 876, § 1, p. 6505; see *Bell*, *supra*, 135 Cal.App.4th at pp. 1149–1150.) Yet, when drafting and enacting a new remedy for the denial of

proper meal and rest breaks, the Legislature included no similar extension of Civil Code section 3289, subdivision (b). (See Stats. 2000, ch. 876, § 7, p. 6509.)

The result is a statutory scheme that expressly applies contract rates of prejudgment interest to claims for the nonpayment of wages but excludes claims seeking statutory remedies for violation of working condition requirements under section 226.7. (See Lab. Code, § 218.6; *Kirby, supra*, 53 Cal.4th at p. 1255.) This disparate specification of which particular statutes or types of actions are subject to Civil Code section 3289, subdivision (b)'s interest rate implies the Legislature did not understand or intend all statutory wage and hour obligations to automatically be governed by the contract rate — and, in particular, that the Legislature intended a difference in treatment for section 226.7 claims versus other claims concerning the payment or nonpayment of wages in accordance with the basic employment bargain.[11] Naranjo offers no

---

[11] Aside from the express statutory scheme, the legislative history makes clear that the Legislature understood different wage claims might be subject to different interest regimes. Commenting on changes wrought by the amendment of Labor Code section 218.5 and the enactment of Labor Code section 218.6, the Senate Industrial Relations Committee observed that "[t]his bill would clarify two overlapping sections of the law, specifying that an employee, *separate from other wage cases*, is eligible to be awarded interest, in addition to wages due and attorney's fees and costs." (Sen. Com. on Industrial Relations, Analysis of Assem. Bill No. 2509 (1999–2000 Reg. Sess.) as amended June 26, 2000, p. 3, italics added.) In short, the Legislature did not understand the new section 218.6, and its 10 percent interest rate, to apply to all wage claims, but only to a subset — a subset that, as our discussion in *Kirby, supra*, 53 Cal.4th at page 1255 makes clear, does not include missed-break premium pay claims.

persuasive reason for us to read a common law contract interpretation doctrine as overriding the choices the Legislature has made.

Naranjo also argues that principles of parity require the same treatment for civil claims under section 226.7 as for administrative unpaid wage claims under Labor Code section 98.1. The argument for parity founders on the disparate statutory language. As discussed, in 2000, the Legislature amended section 98.1 to expressly provide that unpaid wages recovered through administrative proceedings should be subject to Civil Code section 3289, subdivision (b)'s 10 percent prejudgment interest rate. (See Lab. Code, § 98.1, subd. (c).) The legislation made no similar provision for heightened interest on missed-break claim judgments under section 226.7. We cannot supply what the Legislature chose to omit.

## VI.

We emphasize the limits of our holdings concerning Labor Code sections 203 and 226. The Court of Appeal held that, as a matter of law, section 226.7 missed-break premium pay is not "wages" for purposes of Labor Code sections 203 and 226. As such, the failure to timely pay or report such payments can never support penalties under either section 203 or 226. We conclude those holdings were incorrect: Missed-break premium pay is indeed wages subject to the Labor Code's timely payment and reporting requirements, and it can support section 203 waiting time penalties and section 226 wage statement penalties where the relevant conditions for imposing penalties are met.

Whether such penalties are available in this particular case is a matter that has yet to be determined. Because of its

conclusion about the nature of missed-break premium pay, the Court of Appeal had no occasion to address Naranjo's argument that the trial court erred in finding Spectrum had not acted willfully (which barred recovery under Lab. Code, § 203); likewise, Spectrum's argument that its failure to report missed-break premium pay on wage statements was not knowing and intentional, as is necessary for recovery under Labor Code section 226, was not addressed on appeal. Those issues remain to be resolved on remand.

We reverse in part the judgment of the Court of Appeal, insofar as it held the failure to timely pay or report section 226.7 premium pay can never support relief under Labor Code sections 203 and 226, and remand for further proceedings in the Court of Appeal not inconsistent with this opinion.

**KRUGER, J.**

**We Concur:**

**CANTIL-SAKAUYE, C. J.**
**CORRIGAN, J.**
**LIU, J.**
**GROBAN, J.**
**JENKINS, J.**
**O'LEARY, J.**[*]

---

[*] Presiding Justice of the Court of Appeal, Fourth Appellate District, Division Three, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion**  Naranjo v. Spectrum Security Services, Inc.

_____

<u>Procedural Posture</u> (see XX below)
**Original Appeal**
**Original Proceeding**
**Review Granted (published)** XX 40 Cal.App.5th 444
**Review Granted (unpublished)**
**Rehearing Granted**

_____

**Opinion No.** S258966
**Date Filed:** May 23, 2022

_____

**Court:**  Superior
**County:**  Los Angeles
**Judge:**  John A. Kronstadt and Barbara Marie Scheper

_____

**Counsel:**

Rosen Marsili Rapp; Posner & Rosen, Howard Z. Rosen, Jason C. Marsili, Brianna Primozic Rapp and Amanda Pitrof for Plaintiffs and Appellants.

Ehlert Hicks and Allison L. Ehlert for California Employment Lawyers Association as Amicus Curiae on behalf of Plaintiffs and Appellants.

Cynthia L. Rice, Verónica Meléndez; George Warner, Carole Vigne; Capstone Law, Ryan H. Wu; Winifred Kao; Jesse Newmark; Miye Goishi; and Jora Trang for California Rural Legal Assistance Foundation, Legal Aid at Work, Bet Tzedek, Asian Americans for Advancing Justice – Asian Law Caucus, Centro Legal de la Raza, UC Hastings Community Justice Clinics and Worksafe as Amici Curiae on behalf of Plaintiffs and Appellants.

Arbogast Law, David M. Arbogast; The Bronson Firm and Steven M. Bronson for Consumer Attorneys of California as Amicus Curiae on behalf of Plaintiffs and Appellants.

Carothers DiSante & Freudenberger, Dave Carothers, Robin E. Largent, Steven A. Micheli; Duane Morris and Paul J. Killion for Defendant and Appellant.

Casey Raymond for Department of Industrial Relations, Division of Labor Standards Enforcement as Amicus Curiae.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Paul J. Killion
Duane Morris LLP
Spear Tower
One Market Plaza, Suite 2200
San Francisco, CA 94105-1127
(415) 957-3141

Jason C. Marsili
Rosen Marsili Rapp LLP
11150 West Olympic Boulevard, Suite 990
Los Angeles, CA 90064
(213) 389-6050